## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 4389 | **DATE** | 8/22/2001 |
| **CASE TITLE** | Carl McKnight vs. Chicago Housing Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The defendant's motion for summary judgment [35-1] is granted on all counts.**

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL MCKNIGHT, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>CHICAGO HOUSING AUTHORITY, )<br>)<br>Defendant. ) | No. 96 C 4389<br><br>Wayne R. Andersen<br>District Judge |

DOCKETED
AUG 2 3 2001

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of the defendant, the Chicago Housing Authority ("CHA"), for summary judgment. Plaintiff, Carl McKnight, filed a four-count Amended Complaint against the CHA alleging that the defendant discriminated against him based on his race, religion, and disability, and in retaliation for his participation in Title VII protected activity. The disability claim was voluntarily dismissed. For the following reasons, we grant summary judgment for the defendant as to the remaining three counts.

### BACKGROUND

The facts are taken from the parties' statements of material fact filed pursuant to Local Rule 56.1. Plaintiff, Carl McKnight, an African American man, began working at the CHA in April of 1993. Throughout his employment at the CHA, plaintiff occupied the position of Warehouse Clerk. Concurrently, he was also a member of a bargaining unit represented by the Service Employee's International Union, Local 73. The Union was party to a collective

47

bargaining agreement which, with the CHA's general policies and rules, governed the terms and conditions of employment for all bargaining unit members, including the plaintiff.

While employed at the CHA, McKnight was involved in numerous conflicts with management staff, particularly with William Russell, the Director of the Central Warehouse Facility and Ken Temple, the Central Warehouse Facility Manager. Both Russell and Temple are Caucasian. According to the plaintiff, they both made derogatory and racist remarks toward black employees. Plaintiff also asserts that the management segregated workers, placing white workers primarily in the more desirable working areas such as Shipping and Receiving while blacks received the less desirable assignments.

McKnight claims that he underwent a spiritual rebirth in December of 1994 and rededicated his life to the Christian faith. Sometime after that, plaintiff alleges that Russell made derogatory statements about McKnight's newly discovered faith, even to the point of telling plaintiff that he was "just faking the s___." (Russell does not admit or deny making this comment.) In response to this and other treatment, plaintiff filed several grievances with the CHA, charging his employers with discrimination and "working him outside of his job description." Plaintiff claims that the CHA retaliated against him for filing these grievances as well as for enlisting in the Employee Assistance Program ("EAP"), in which plaintiff enrolled in order to alleviate the burden of his increasing problems with stress. On May 30, 1995, the CHA's Board of Commissioners resigned pursuant to an agreement with the United States Department of Housing and Urban Development ("HUD"). HUD then appointed an interim Executive Committee. This committee soon thereafter began to replace all CHA staff in executive positions. They hired an outsider, John Nelson, to be the new Deputy Executive Director for Operations. During the summer of 1995, the interim team determined that the CHA

2

was experiencing serious budgetary difficulties, and they began plans to cut expenditures via a reduction-in-force. This layoff ordered by Nelson and implemented by CHA Manager of Labor Relations Kevin Krug affected 392 CHA employees. The plan required, among many other things, the layoff of two employees in the Warehouse Clerk position.

The parties agree that Kevin Krug, as head of human resources, was responsible for selection of employees for layoff. There is no evidence that any other CHA employees played any role in the selection of employees for layoff. Plaintiff even admits that he has no knowledge whether either of his supervisors played any role in the decision. Initially, Krug chose Odell Brown and Bruce Borum for layoff because they had the least seniority of all warehouse clerks. However, on September 27, 1995 Albert Washington, Vice President and Chief Steward for Local 73, requested a meeting with Krug regarding Krug's selections. Washington argued that selecting Brown and Borum violated Article 11.1 of the collective bargaining agreement, which states that in the event of a layoff the Authority was to evaluate employees based on their "skill, ability, knowledge, and disciplinary and attendance records. If all things are equal, the least senior employee in the position will be laid off." Washington then pointed out that all things were not equal and that neither Brown nor Borum had disciplinary records while Gerald Mikell and McKnight did.

McKnight's disciplinary record was quite extensive by October of 1995. He had received warnings for sleeping on the job, threatening co-workers, and being out of his work area. In addition, he had received a three-day suspension on March 14, 1995 for "unprofessional and inappropriate conduct" and another suspension on April 2, 1995 for insubordination. According to the plaintiff, after Russell gave him the first suspension notice he told plaintiff, "You say you are a man of God. Let your _____ing God save you now." (See McKnight

3

Dep. p.63) (Russell does not admit or deny making this remark.) Incidentally, plaintiff filed a grievance contesting the first suspension, and the suspension was upheld as "justified" by an independent arbitrator in February of 1996. The plaintiff also filed a grievance regarding his selection for layoff. A grievance meeting was conducted on October 19, 1995, and at the conclusion of the meeting Krug upheld the lay off.

On November 6, the date plaintiff's layoff was to go into effect, William Russell and Ken Temple submitted a request to discharge the plaintiff for allegedly taking photographs and secretly recording conversations between them. The effect of this discharge would be to eliminate McKnight's recall rights. On November 14, 1995 officers of the Human Resources department held a disciplinary meeting, and McKnight was discharged. Plaintiff filed a grievance in response to the discharge and an independent arbitrator determined that the discharge was not justified because taking photographs was not prohibited by work rules and because CHA failed to prove that McKnight actually recorded conversations. The arbitrator ordered that McKnight be paid any lost wages for the period of his suspension pending termination, and his recall rights were reinstated. Because this was a binding arbitration and because neither party disputes the outcome, there is no issue for this Court regarding this discharge. Therefore our attention is focused solely on the plaintiff's layoff.

## DISCUSSION

*I. Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affadavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

4

Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the nonmoving party. _Doe v. R.R. Donnelley & Sons Co._, 42 F.3d 439, 443 (7th Cir. 1994). The nonmoving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. _Anderson v. Liberty Lobby_, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The nonmoving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. _Celotex Corp. v. Catrett_, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. _Anderson_, 477 U.S. at 252. However, if a reasonable jury could return a verdict for the nonmoving party, then the Court will not render summary judgment. _Id_. The mere possibility of a factual dispute is not enough to defeat a summary judgment motion. _Id. at 250_.

_II. Race Discrimination._

Plaintiff's direct evidence consists of a single comment by Temple. According to the plaintiff, he and Temple got into a heated conversation during a disciplinary meeting and Temple said to him, "You want a piece of me, don't you? I'll jump over there and kick your black ass." Although Temple denies making this comment, the Court must treat it as fact for purposes of this motion. The only other evidence offered by plaintiff are rumors that Russell called two employees in separate instances "black b____." However, the plaintiff has failed to provide the

5

Court with any direct statements or testimony from any other employees showing that these comments were actually made. Plaintiff asks the Court to rely on hearsay. According to the Seventh Circuit, "evidence relied upon [by the District Court] must be competent evidence of a type admissible at trial. Thus a party may not rely upon inadmissible hearsay in an affadavit or deposition to oppose a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); see also, *Minor v. Ivy Tech State College*, 174 F.3d 855, 856 (7th Cir. 1999). Hence, we must disregard plaintiff's claim that Russell made racial comments to employees.

There is no evidence that Temple's remark [nor Russell's for that matter] had any connection to plaintiff's layoff. Temple's isolated comment to McKnight occurred four months prior to McKnight's lay off. The comments allegedly made by Russell have no context at all. In *Robin v. Espo Engineering Corporation*, 200 F.3d 1081 (7th Cir. 2000), the Court in finding that remarks were unrelated to the employment decision in question, noted that the remarks lacked temporal proximity to the employment decision.

The Seventh Circuit has made it clear that "in order for allegedly discriminatory remarks to 'qualify as direct evidence of discrimination, the plaintiff must show that the remarks were related to the employment decision in question.'" *Robin at* 1089 (quoting *Fuka v. Thompson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996). Plaintiff provides no evidence that the two supervisors who allegedly had this racial animus were involved in the decision making process to lay him off. In fact, plaintiff admits that he has no knowledge whether either Mr. Russell or Mr. Temple played any role in the decision at all. Furthermore, he also admits that Krug, *and not Russell,* was responsible for implementing the collective bargaining agreement.

Plaintiff provides no evidence that Russell or Temple played any part in the decision or that Krug himself was infected with any racial motives.

In order to prevail using the indirect approach, a plaintiff must first establish a prima facie case by showing that (1) he was a member of a protected class, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) others not in the protected class were treated more favorably. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029 (7th Cir. 1999); also *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once a prima facie case has been established, the employer must then articulate a legitimate non-discriminatory reason for terminating the employee. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 923 (7th Cir. 1988). If the employer meets that burden, then the employee must prove that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. Id. It is undisputed that McKnight is a member of a protected class. The parties do dispute however whether McKnight was meeting legitimate performance expectations.

Defendants argue that McKnight was insubordinate, unprofessional, and had numerous disciplinary problems. In support of this, they offer testimony by Temple and documentation that McKnight had been suspended. They also offer several memoranda regarding plaintiff's disciplinary problems, including one that accuses plaintiff of threatening a female co-worker, one charging plaintiff with insubordination, one for sleeping on the job, and one accusing the plaintiff of using the wrong equipment for a job and working too slow.

McKnight, on the other hand, insists that he was a good worker. He offers the testimony of his former supervisor, Mark Woods, attesting to his good behavior and hard work. Generally, a former supervisor's testimony is not enough to defeat summary judgment. *Id at 924.* This is

7

especially true in this case because Woods has no direct knowledge of the facts surrounding plaintiff's layoff. Plaintiff also offers two performance evaluations. The first is dated July 12, 1994; McKnight received all satisfactory marks. The second is dated December 13, 1994; on this one, McKnight received mostly satisfactory marks, with one box for teamwork checked "exceed expectations." Although these evaluations suggest that McKnight was meeting expectations, they are both from 1994, at least eight months before McKnight was laid off. Nevertheless, it appears that there may be a legitimate basis for dispute as to whether plaintiff was performing up to standards.

The third element of a prima facie case is whether there was an adverse action. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus v. Ellerth*, 524 U.S. 742, 761 (1998). It is uncontested that the plaintiff was laid off. Thus, it appears that the plaintiff has satisfied this element.

The fourth element asks whether similarly situated individuals who were not in the protected class treated more favorably. The plaintiff relies again on his own deposition as well as the affadavit of Woods. McKnight and Woods allege that whites were not discharged by Russell while blacks were. However, plaintiff does not even offer the race of any of the other 391 employees who were also laid off by the defendant. Nor does the plaintiff offer the race of Brown and Borum who were originally selected for lay off and then re-instated to plaintiff's detriment. In *Vanasco v. National-Louis University*, 137 F.3d 962 (7th Cir. 1998), the Court wanted information regarding qualifications. Even comparative evidence listing the names and ages of employees being considered for tenure was unconvincing. In *Hiatt v. Rockwell Int'l*

8

*Corp.*, 26 F.3d 761, 771 (7th Cir. 1994), plaintiff needed to bring in examples of other employees who had engaged in similar misconduct and a description of how they were treated. Also see *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931-932 (7th Cir. 1993). In the present case, plaintiff has failed to do any of this. Plaintiff alleges that white workers were treated differently and wouldn't have to endure what he did. This may be true, however, plaintiff does not offer any evidence or testimony from any employees, except for Woods, corroborating his account. (Incidentally, Woods' affadavit is given less weight because he is far from a disinterested party after Russell fired him for knocking the hat off of a truck driver.) Plaintiff fails to provide evidence of this fourth element and his prima facie case fails as a matter of law.

Even if plaintiff were to establish a prima facie case, defendant offers a legitimate neutral explanation for the adverse action. Defendant argues that McKnight was laid off because of a reduction-in-force that affected almost four hundred employees, and that he was not a lone employee singled out of many. In fact, plaintiff identifies no racial bias in the actual selection of the employees to be laid off. He offers no evidence that the defendant is telling anything but the truth, and thus he can not rebut defendant's explanation as pretextual.

### III. *Religious Discrimination*

In order to establish a prima facie case for religion discrimination, a plaintiff must show that (1) he engaged in a sincere religious practice or observance that conflicts with an employment requirement, (2) he called the religious observance or practice to his employer's attention, and (3) the religious practice or observance was the basis for the adverse action. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d. 1569, 1575 (7th Cir. 1996). If McKnight established a prima facie case, it would then be the employer's burden to show that either it

9

offered him a reasonable accommodation of the religious practice or that any accommodation would have resulted in undue hardship. *Id*.

Turning to the first question, plaintiff was not engaged in a religious practice or observance that conflicted with an employer's requirement. In December of 1994, Mr. McKnight became a born-again Christian. Shortly thereafter, he began carrying a Bible around with him at work and discussing his conversion with co-workers. On one occasion, plaintiff was talking to a security officer with a Bible in his hand when Russell walked past and told plaintiff "to put that damn Bible away and get back to work." Although this may show something less than accommodation, it also implies that plaintiff was not doing what he was being paid to do at that particular time but instead was talking with co-workers. Plaintiff also complained to both Russell and a co-worker about the profanity and gambling occurring at the CHA facility. According to plaintiff, Russell replied to the effect that "this was a warehouse and this was how people conducted themselves and that he could not do anything about it." At no time did CHA or its supervisors require plaintiff to do anything that conflicted with his religion.

Even more significant, plaintiff offers no evidence of a causal link between his religious activity and his lay off, so no reasonable jury could find that his religious practice was the basis for his layoff. In fact, plaintiff makes no comparisons between his religious activity and that of coworkers who were or were not laid off with him. He simply states that non-religious people were generally treated better. This is unsupported by any testimony or documentation other than plaintiff's naked accusation. Plaintiff's lack of causal evidence stands in stark contrast with cases such as *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997). In *Venters*, plaintiff's supervisor gave her religious lectures interspersed with numerous references to Venters' status as an at-will employee who, as the supervisor reminded her, could be dismissed at any time.

10

McKnight offers statements that may demonstrate that he had an unreceptive supervisor, but he provides no evidence of a link between this animus and any adverse action. Coupled with defendant's neutral explanation that McKnight's layoff was a result of enforcing the collective bargaining agreement, it is clear that plaintiff fails to establish this crucial causal link.

"The reach of Title VII is not limited solely to discrimination that can be described as 'economic' or 'tangible.'" *Venters at 974, (quoting Meritor Savings Bank v. Vinson, 477 U.S. at 64, 106 S.Ct. at 2404).* Plaintiff offers several comments, which he now argues, constitute evidence of harassment and thus prevent the entering of summary judgment. However, he does not mention this claim anywhere in his EEOC charge or in his Amended Complaint. Instead, his claim is that CHA "treated him differently" by discharging him because of his religion. The Seventh Circuit said in *Sattar v. Motorola, 138 F.3d 1164, 1168 (7th Cir. 1998),* they would not consider a claim of religious harassment because plaintiff did not allege one.

> They add "even if his pleadings might have been capacious enough to encompass both theories, the purpose of summary judgment is to refine the case sufficiently so that both parties know the precise injuries alleged and the evidence that would be used to prove them. Sattar alerted Motorola only to his unlawful discharge claim, and that is the basis on which his case must now stand or fall." *Id.*

Like Sattar, plaintiff has not alleged a hostile work environment in his pleadings so raising it now in response to this motion is insufficient to survive summary judgment.

*IV.    Retaliation*

Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C.2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse action, and (3) there is a causal link between his discharge and the protected

11

activity. *Russell v. Board of Trustees of the Univ. of Illinois at Chicago*, 2001 WL 225051 (7th Cir. 2001). If McKnight succeeds at establishing a prima facie case, CHA must provide a nondiscriminatory reason for its conduct, which, if unrebutted by McKnight, would compel a grant of summary judgment in CHA's favor. *See Rennie v. Dalton*, 3 F.3d 1100, 1108-09 (7th Cir.1993). Plaintiff claims that he was retaliated against for enlisting in the Employee Assistance Program, or in the alternative, for filing grievances. These include grievances for discrimination, harassment, and for working him out of his job description.

In order to satisfy this first element of a prima facie case, plaintiff does not need to demonstrate that he was harassed or discriminated against but instead that he thought he was challenging unlawful activity. *Holland*, 883 F.2d 1314 (7th 1989). Plaintiff offers several grievances as evidence. The first is dated April 12, 1995. In this grievance, McKnight claims that he was unfairly interrogated. However, he admits that his grievance was based on being "interrogated without representation" and not any Title VII discrimination. Plaintiff also produced a grievance dated April 13, 1995 outlining the events of February 14, 1994. On this date, Temple allegedly singled plaintiff out of a group of others for standing around. Temple then made plaintiff go and see Russell, who subsequently sent plaintiff escorted out of the building. Plaintiff does not mention that Russell's actions were based on any impermissible Title VII criterion but only says that "he was an easy target for personal vendettas." Another grievance filed on the same day concerned events that occurred on January 20, 1994. Plaintiff alleges that Russell falsely blamed and scolded him for a mix-up of building supplies and a breakdown in the system. Again, plaintiff does not mention in this grievance anything relating to a Title VII impermissible conduct. Although these grievances allege harm to the plaintiff, they do not allege harm that falls under Title VII protection. The Court additionally notes that

12

this grievance, like the previous one, was filed almost a year and a half after the alleged incident and just two weeks after plaintiff's second suspension. Because these grievances were filed after the suspensions, these grievances can not be the cause of plaintiff's suspensions, which ultimately affected the lay off decision. The only grievances that would possibly fall into the protected category are those that the plaintiff claims he filed pertaining to race or religious discrimination. Since the plaintiff provides neither any evidence of these grievances nor any context in which they might have occurred, the Court is unable to find that a reasonable jury could make a determination based upon them.

The Court must also answer the question whether enlisting in the Employee Assistance Program constitutes protected activity. Plaintiff admits in his deposition that he enrolled in the EAP in order to get assistance with his increasing problem with stress. Plaintiff provides no evidence that by enrolling in EAP he was opposing unlawful activity or that EAP is intended in any way to combat unlawful activity as required for a Title VII retaliation claim. *Id.* Instead, by enrolling, he merely sought help. Thus, plaintiff's prima facie case fails as a matter of law.

Even if plaintiff were able to make out a prima facie case, the defendant has offered a neutral explanation for the adverse action. Again, the CHA asserts that plaintiff was laid off because the collective bargaining agreement demanded consideration of the employee's disciplinary record. Moreover, the plaintiff has no knowledge or evidence that Russell, who allegedly retaliated against him, played any role in the layoff decision. Plaintiff offers no rebuttal for defendant's explanation but wishes this Court to infer one from a list of allegations. We can not.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted on all counts.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: August 22, 2001